Adam Alba (13128)
 alba@mcpc.law
Yevgen Kovalov (16297)
 kovalov@mcpc.law
**MAGLEBY CATAXINOS, PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-1902
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiff Hawkphin Sales, LLC

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT COURT OF UTAH, SOUTHERN DIVISION

| **HAWKPHIN SALES, LLC,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**AMERICAN DEFENSE TECHNOLOGIES, LLC; WILLIAM JOSEPH CARA, LLC; FRANCHISE PARTNERS, LLC; WILLIAM UICKER; LUANN UICKER; AND BROOKE GEFTMAN**<br><br>    **Defendants.** | **COMPLAINT AND JURY DEMAND**<br><br><br><br><br><br><br><br><br><br>Case No.:  4:25-cv-53<br><br>Honorable |
|---|---|

Plaintiff Hawkphin Sales, LLC ("Plaintiff" or "Hawkphin"), through counsel Magleby Cataxinos, PC, complains and alleges of Defendants American Defense Technologies, LLC ("ADT"); William Joseph Cara, LLC ("WJC"); William Uicker ("William"), Franchise Partners, LLC; Luann Uicker ("Luann"); and Brooke Geftman ("Geftman") (together, "Defendants") as follows.

## PARTIES

1. Hawkphin is an Iowa limited liability company, with its principal place of business in Iowa.

2. All the natural persons who are Hawkphin's ultimate beneficial owners are citizens of Iowa.

3. ADT is a Utah limited liability company, with its principal place of business in St. George, Utah.

4. WJC is a Delaware limited liability company, with its principal place of business in St. George, Utah.

5. WJC is listed in ADT's corporate filings as the manager of ADT.

6. Franchise Partners, LLC is a Florida limited liability company owned by William Uicker.

7. Upon information and belief, ADT is the alter ego of William Uicker.

8. Upon information and belief, WJC is the alter ego of William Uicker.

9. Upon information and belief, Franchise Partners is the alter ego of William Uicker.

10. Upon information and belief, none of the natural persons who are ADT's or WJC's ultimate beneficial owners are citizens of Iowa.

11. William Uicker is an individual and is a citizen and resident of California or Florida.

12. William Uicker is also ADT's President and a member of WJC. Uicker acted within the course and scope of his agency on behalf of WJC and ADT.

13. Luann Uicker is an individual and is a resident of Florida.

14. At all relevant times, Luann Uicker was ADT's bookkeeper and knew all the relevant details of ADT's debts and obligations.

15. Luann Uicker is William Uicker's mother.

16. Geftman is an individual and is a citizen and resident of California.

17. At all relevant times, Geftman was a salesperson for ADT and knew all relevant details concerning the transaction between Hawkphin and ADT.

## JURISDICTION AND VENUE

18. Because there is complete diversity among the parties and the amount in dispute is more than $75,000, exclusive of interest and costs, this Court has subject matter jurisdiction under Title 28, Section 1332 of the United States Code.

19. Because the conduct complained of herein was committed using ADT, a company headquartered in the State of Utah, Defendants purposefully availed themselves of the jurisdiction of this Court, and for the Defendants that reside in Utah, this Court has personal jurisdiction over those Defendants.

20. Further, all Defendants conducted substantial and continuous local activity in Utah, as set forth in the allegations below, which are incorporated by reference, and which activities give this Court personal jurisdiction over all the Defendants.

21. All Defendants also had the minimum local contacts with Utah for this Court to exercise personal jurisdiction, as set forth in the allegations below, which allegations are incorporated by reference.

22. Venue is appropriate in this Court under Title 28, Section 1391 of the United States Code, as the injuries complained of occurred in St. George, Utah.

## GENERAL ALLEGATIONS

### Contract between Hawkphin and ADT

23. Hawkphin is a retailer that specializes in selling firearms and ammunition to end consumers.

24. ADT is a wholesale supplier of ammunition and related products.

25. On April 25, 2022, Hawkphin submitted a purchase order to ADT for several containers of various rounds of ammunition (the "Purchase Order").

26. ADT interfaced with Geftman and William Uicker on the terms of the Purchase Order the submission of the Purchase Order to ADT.

27. The Purchase Order was for a total sales price of $1,120,000.00.

28. As set forth in the Purchase Order, the parties agreed that Hawkphin would pay 30% down (the "Down Payment"), with the remaining balance to be paid upon presentation of the bill of lading for the ammunition.

29. As set forth in the Purchase Order, the parties also agreed that if the ammunition was not delivered by July 31, 2022, then ADT would issue a full refund of the Down Payment to Hawkphin.

30. ADT accepted the terms of Hawkphin's purchase order, as reflected in communications between ADT and Hawkphin, and as reflected in an invoice prepared by ADT and delivered to Hawkphin.

31. Thus, on April 27, 2022, Hawkphin wired $336,000.00 to ADT, which was 30% of the $1,120,000.00 set forth in the Purchase Order.

32. By early June of 2022, ADT had not presented a bill of lading to Hawkphin, and it had not delivered the ammunition to Hawkphin.

33. By July 31, 2022, ADT had still not presented the bill of lading or delivered the ammunition to Hawkphin, and ADT was therefore in breach of the contract for the sale of the ammunition.

34. Thus, at least as early as April 27, 2022, Hawkphin had a claim against ADT for the goods ordered, or for the return of the Down Payment, and ADT had a debt to Hawkphin for the goods ordered, or for the return of the Down Payment.

35. On August 10, 2022, ADT offered to accept a request for a refund and cancellation of the order.

36. On August 22, 2022, Hawkphin formally requested a refund for the 30% Down Payment.

37. However, ADT refused to provide Hawkphin with the requested refund, and it never presented a bill of lading or delivered the ammunition.

**The Default Judgment and Discovery**

38. Hawkphin filed suit against ADT in the Fifth District Court for the State of Utah on February 17, 2023, with case number 230500132 (the "Underlying Action").

39. Hawkphin obtained a default judgment against ADT on April 28, 2023, and attempted collections and conducted some post-judgment discovery.

40. The post-judgment discovery revealed startling facts about William Uicker's and ADT's failure to observe corporate formalities, and the extent to which ADT was merely a façade for William Uicker personally through 2022 and 2023.

41. For example, bank statements from ADT's banks show a pattern of high-flying domestic and international travel and spending for William Uicker personally, including thousands of dollars spent on trips to LA, New York, Dallas, Las Vegas, London, Bucharest, Paris, Budapest, Barcelona, and Brussels, among other places.

42. The bank statements also revealed Uicker spending money on jewelry in Italy, high-end bars, clubs and restaurants, inflight entertainment, and a host of other expenses that could have no real relationship to legitimate business expenses.

43. Post-judgment discovery also revealed that, at all relevant times, ADT was and is insolvent.

44. For example, starting in 2021 and through the present, several entities have filed claims against ADT and Uicker and his related entities for unpaid bills, similar to Hawkphin's claims against ADT.

45. One claimant alleged that it paid ADT over $362,500 for an order of primers that ADT never delivered.

46. Another claimant brought suit against ADT and Uicker for false statements related to promises to supply ammunition, and alleged damages of $617,681.20 against ADT and other defendants.

**The Unlawful Transfers**

47. William Uicker, the corporate representative for ADT, has refused to comply with post-judgment discovery and collection efforts.

48. Moreover, Uicker and the Defendants have engaged in significant and brazen transfers of cash (the "Transfers") knowing that they would likely incur liabilities due to their wrongful conduct, and with intent to put their assets beyond Hawkphin's reach.

49. For example, between June 1, 2022 and June 14, 2023, ADT transferred at least $100,970.06 to Luann Uicker over the course of several transactions.

50. Upon information and belief, the transfers to Luann Uicker were not for the reasonably equivalent value of her alleged bookkeeping services to ADT.

51. As a result of her bookkeeping duties to ADT, Luann Uicker knew or must have known that ADT had obligations to Hawkphin as early as 2022.

52. Notwithstanding her knowledge of these obligations, Luanne Uicker nevertheless facilitated in the transfer of over $100,000 to her personally from ADT.

53. Between June 1, 2022 and June 14, 2023, ADT transferred at least $80,000.00 to William Uicker, and it transferred at least $40,000.00 to Geftman.

54. Upon information and belief, the transfers to William Uicker were not for the reasonably equivalent value of his alleged management of ADT.

55. Upon information and belief, the transfers to Brooke Geftman were not for the reasonably equivalent value of her alleged sales activities for ADT.

56. Between June 1, 2022 and June 14, 2023, ADT transferred at least $19,000 to Franchise Partners.

57. Upon information and belief, the transfers to Franchise Partners were not for the reasonably equivalent value of any services provided to ADT.

58. And on January 20, 2023, ADT transferred at least $279,500.00 to an entity called "Ammo & D&S Imports, LLC."

59. Upon information and belief, the transfers to Ammo & D&S Imports, LLC were not for the reasonably equivalent value of any goods or services provided to ADT.

60. Through the nature of their work and involvement with ADT and Hawkphin, all Defendants were aware of Hawkphin's order, and they were all aware of Hawkphin's outstanding demand for a refund of its deposit, and ADT's obligations to Hawkphin.

## FIRST CLAIM FOR RELIEF
### (Voidable Transfers – Utah Code § 25-6-202)

61. Hawkphin realleges and incorporates the preceding allegations by reference.

62. Hawkphin is, and has been since 2022, a creditor of ADT.

63. Defendants made the foregoing Transfers with actual intent to hinder, delay, or defraud Hawkphin.

64. Defendants made some or all of the foregoing Transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, and ADT knew, or reasonably should have known, that it would incur debts beyond its ability to pay as they became due.

65. The Transfers to Luann Uicker, William Uicker, and to Franchise Partners were to "insiders," as that terms is used in Utah Code § 25-6-102(8).

66. Upon information and belief, Defendants ADT, William Uicker, and WJC retained possession or control of some or all of the property transferred after the Transfers.

67. The Transfers were never disclosed to Hawkphin.

68. Before some of the Transfers were made, ADT had been threatened with suit and/or sued.

69. ADT has absconded with Hawkphin's funds, refusing to participate in any of the post-judgment collection proceedings.

70. The Transfers occurred shortly before and shortly after a substantial debt was incurred by ADT.

71. Hawkphin is entitled to an avoidance of the Transfers; an attachment against Defendants' properties or assets to satisfy ADT's obligations to Hawkphin; an injunction against further dissipation, disposition, and/or other transfer of any assets or property by ADT; an injunction against the formation of additional entities and appointment of a receiver to take charge of the assets transferred or other property of the Defendants.

72. ADT, WJC, Franchise Partners, and William Uicker are also jointly and severally liable to Hawkphin on account of being alter egos of each other.

### SECOND CLAIM FOR RELIEF
### (Voidable Transfers – Utah Code § 25-6-203 – In The Alternative)

73. Hawkphin incorporates the preceding allegations by reference.

74. ADT made the Transfers described above without receiving a reasonably equivalent value in exchange for the Transfers.

75. Upon information and belief, at all relevant times, ADT was insolvent, including because the sum of its debts was greater than its assets, and because ADT was not paying its debts as they became due.

76. Many of the Transfers were made to insiders and ADT was insolvent at the time, and the insiders, William Uicker, Luanne Uicker, and Franchise Partners, had reasonable cause to believe that ADT was insolvent.

77. Hawkphin is therefore entitled to an avoidance of the Transfers; an attachment against Defendants' properties or assets to satisfy ADT's obligations to Hawkphin; an injunction against further dissipation, disposition, and/or other transfer of any assets or property by ADT; an injunction against the formation of additional entities and appointment of a receiver to take charge of the assets transferred or other property of the Defendants.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Relief – Alter Ego)**

78. Hawkphin incorporates the preceding allegations by reference.

79. There is substantial controversy between Hawkphin and Defendants.

80. Hawkphin and Defendants have adverse legal interests.

81. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

82. Upon information and belief and at all relevant times, there was such a unity of interest and ownership that the separate personalities of William Uicker on the

one hand, and ADT, WJC, and Franchise Partners, on the other hand, did not exist and instead an alter ego relationship existed.

83. Specifically, upon information and belief, ADT, WJC, and Franchise Partners were merely pass-through companies; they were severely under-capitalized; they failed to observe corporate formalities; William Uicker siphoned the corporate funds of the entities; the entities lacked appropriate and adequate corporate records; and William Uicker used the entities as a façade for his business operations and personal expenditures.

84. Under these circumstances, the observance of the corporate form with respect to the foregoing entities would sanction a fraud, promote injustice, and/or allow an inequitable result to follow.

85. Hawkphin is therefore entitled to a declaratory judgment that the entities are alter egos of William Uicker, and William Uicker and the entities are liable to Hawkphin for the Judgment in the Underlying Action.

**PRAYER FOR RELIEF**

Wherefore, Hawkphin prays for judgment against Defendants, jointly and severally, as follows:

1. On the First or Second Claims for Relief:
   a. Avoidance of all of the aforementioned transfers of ADT's assets;
   b. Attachment against the aforementioned assets transferred by ADT to satisfy ADT's obligations to Hawkphin;

    c.    An injunction against further dissipation, disposition, and/or other transfer by ADT of its assets;

    d.    For the appointment of a receiver to take charge of ADT and the assets transferred; and

    e.    For any other relief the circumstances may require.

2.    On the Third Claim for Relief, a declaration that ADT, WJC and Franchise Partners are alter egos of William Uicker and that they are liable for the Judgment against ADT.

3.    For reasonable attorney fees and costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues so triable.

DATED this 24th day of April 2025.

                        **MAGLEBY CATAXINOS, PC**

                        /s/ Adam Alba
                        Adam Alba
                        Yevgen Kovalov

                        Attorneys for Plaintiff Hawkphin Sales, LLC